IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**TIMOTHY A. WILLIAMS**                                                                                     **PETITIONER**

**V.**                                                                                        **NO. 1:21-CV-109-DMB-RP**

**SUPERINTENDENT ANDREW MILLS**                                                            **RESPONDENT**

**OPINION AND ORDER**

Timothy A. Williams filed a pro se petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons explained below, Williams' pro se petition will be dismissed with prejudice.

**I**
**Procedural History**[1]

**A. Conviction and Sentence**

On August 30, 2019, Timothy A. Williams was convicted of the crime of possessing a firearm as a felon in the Circuit Court of Lee County, Mississippi.[2] Doc. #10-1 at PageID 113; Doc. #10-3 at 269. The trial court sentenced him as a habitual offender to ten years of imprisonment without parole pursuant to Mississippi Code § 99-19-81.[3] Doc. #10-1 at PageID 113.

**B. Direct Appeal**

Williams appealed his conviction and sentence to the Mississippi Supreme Court. Through his appellate counsel, Williams claimed on both constitutional and state law grounds that he was denied his right to a speedy trial despite numerous demands for a speedy trial and a hearing. Doc. #10-7 at 1, 4.

---

[1] The procedural history and the relevant facts below are primarily drawn from the respondent's response to the petition, as both are well-documented and uncontested.

[2] Williams is in the custody of the Mississippi Department of Corrections and is currently housed at the South Mississippi Correctional Institution in Leakesville, Mississippi.

[3] Section 99-19-81 provides that for any person convicted of a felony who has two prior felony convictions and has been sentenced to at least one year of incarceration on those prior felonies, the maximum term of imprisonment for that felony must be imposed without the possibility of parole or probation.

Granting Williams' pro se motion to file a supplemental brief, the Mississippi Supreme Court ultimately considered four claims by Williams on direct appeal: (1) the evidence was insufficient to prove possession, (2) the verdict was against the weight of the evidence, (3) the State elicited overly prejudicial evidence and testimony, and (4) his constitutional and statutory speedy trial rights were violated. *Williams v. State*, 305 So. 3d 1122, 1129–31 (Miss. 2020).[4] On November 19, 2020, the Mississippi Supreme Court affirmed Williams' conviction and sentence. *Id.* at 1134.

### C. Federal Habeas Proceedings

On June 30, 2021, Williams filed a pro se petition for a writ of habeas corpus in the United States District Court for the Northern District of Mississippi raising one ground for relief—his right to a speedy trial under the Sixth and Fourteenth Amendments of the United States Constitution and under Article 3, Section 26, of the Mississippi Constitution. Doc. #1 at 6, 16. In support of his petition, Williams references his appellate brief and the Mississippi Supreme Court's decision on direct appeal. *Id.* at 6. Liberally construing Williams' petition, he raises the same two speedy trial claims raised by his appellate counsel on direct appeal. Williams also seeks an evidentiary hearing on his petition. *Id.* at 16.

### D. Merits of Sole Ground for Relief Reviewed in State Court

Because the Mississippi Supreme Court already considered Williams' speedy trial act claims and decided those issues against him, such claims are barred from habeas review by this Court pursuant to the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to

---

[4] Williams states that he raised the claims in Ground One in a post-conviction motion or petition for habeas corpus in the state trial court. Doc. #1 at 6. The record does not support this assertion. A search of the Mississippi Supreme Court's docket reflects that Williams did not seek state post-conviction collateral review before seeking federal habeas corpus relief. Nor did he seek post-conviction relief in the trial court. The docket in his underlying criminal case also does not support such an assertion; rather, it reflects that the only filing Williams submitted to the Lee County Circuit Court after the Mississippi Supreme Court affirmed his conviction and sentence was a letter filed on August 25, 2021, asking that his request for transcripts in his criminal case be presented to the court reporter. *See* Docs. #9-2, #9-3.

> the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2). The first exception in subsection (d)(1) applies to questions of law. *Morris v. Cain*, 186 F.3d 581, 584 (5th Cir. 2000). The second exception in subsection (d)(2) applies to questions of fact. *Id.* Since Williams' petition challenges both the application of law and the finding of fact, this Court must consider both exceptions.

### 1. § 2254 (d)(1)

Under subsection (d)(1), a petitioner's claim merits habeas corpus review if its prior adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). A state court's decision is contrary to federal law if it arrives at a conclusion opposite of that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A state court's decision involves an unreasonable application of federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to the facts of a prisoner's case, and such application of law to facts must be objectively unreasonable. *Id.* at 409. As detailed below, Williams has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts or that its decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Williams' sole ground for relief.

3

### 2. § 2254 (d)(2)

Under § 2254(d)(2), William's petition may merit review if the facts to which the Mississippi Supreme Court applied the law were determined unreasonably in light of the evidence presented. Because that court is presumed to have determined the facts reasonably, it is Williams' burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); *see* 28 U.S.C. § 2254(e)(1). As discussed below, Williams fails to meet this burden such that he cannot use subsection (d)(2) to move his claims beyond § 2254(d), which bars from habeas corpus review issues already decided on the merits.

## II
## Factual Background

The Mississippi Supreme Court summarized the relevant facts and procedural history of this case leading up to Williams' direct appeal:

> On February 4, 2018, two armed men scuffled with Kamal Ewing outside a Motel 6 on McCullough Boulevard in Tupelo, Mississippi. When Ewing fled, the men tried to force their way into the room of Ewing's girlfriend, Brandi Singleton. Seeing the armed men through a window, Singleton crawled across the motel floor to call 911. Tupelo Police Department patrol officers responded, but the two men had left. Singleton told the officers she recognized one of the men. She claimed that the man had raped her a week earlier. Singleton gave a brief written statement to officers describing the alleged rape and attempted motel-room entry.
>
> Two weeks later, Detective Scott Floyd interviewed Singleton at Tupelo police headquarters. This time, she gave a longer and more detailed statement about the February 4, 2018 motel event and what had happened a week earlier. Singleton had since used Facebook to identify her attacker, "YB Williams," a/k/a Timothy Williams. Singleton reported that a week earlier, on January 26, 2018, Williams forced his way into her motel room, zip-tied her hands together, and raped her. Singleton remembered Williams had a black, semi-automatic pistol with a brown grip, possibly a .45 caliber. According to Singleton, after Williams raped her, he suggested she work as a prostitute for him. He offered her protection, claiming he had other girls and a house she could stay in. He then abruptly left the motel room, leaving behind his .45 caliber pistol. Singleton, who was still tied up, used a lighter to burn the zip-ties off. Once free, she called a friend to come get her.
>
> Singleton claimed she did not initially report the rape because of her former gang

4

affiliation and work as a prostitute. She believed Williams found her through an advertisement on an escort website called Backpage. The two continued to communicate after January 26. Singleton asked Williams for money and accused him of stealing from her. Williams kept urging Singleton to work for him and demanded she return his pistol. When Singleton resumed working as a prostitute around the motel on February 4, Williams and an accomplice showed up. They fought with her boyfriend, then tried to get inside her room. She had not told anyone she had returned to the motel, so Singleton feared Williams was stalking her.

Officers arrested Williams on February 27, 2018. After he signed a *Miranda* waiver, Detective Floyd conducted a video interview of Williams. During the interview, Williams gave a markedly different story than Singleton's. Williams claimed he first met Singleton as a customer at the motel where he worked. He denied ever having consensual or non-consensual sex with her. But he admitted smoking marijuana with her and loaning Singleton a Colt. 45 pistol he "bought off the street." During the interview, Williams also admitted the Colt .45 pistol was "his pistol." Williams asked Detective Floyd if he would "catch another charge" for the gun—in addition to the alleged kidnaping and rape. Detective Floyd explained it was possible, but at that moment the kidnaping and rape were his main concern. Detective Floyd reduced the interview details to a typed written statement. Williams read the statement and was given the opportunity to make corrections. Williams then signed it. Williams admitted in the written statement that he loaned his Colt. 45 pistol to Singleton for protection.

On June 27, 2018, a grand jury indicted Williams for possessing a firearm as a felon. Based on Williams's prior separate burglary convictions, the indictment included a habitual offender enhancement. Williams pled not guilty at his August 7, 2018 arraignment. He was held without bond. Nearly six months after his arrest, on August 13, 2018, Williams filed a pro se motion for a speedy trial. He filed his second pro se speedy trial motion on November 1, 2018. On February 14, 2019, Williams, through counsel, moved to suppress his written statement. Williams argued he signed the statement believing he and Detective Floyd had agreed that Williams would not be charged for possessing a firearm as a felon.

On May 1, 2019, Williams filed another pro se motion. This time he asked that the State's case be dismissed on speedy trial grounds. A week later, the trial court heard Williams's motion to suppress. Detective Floyd testified there were no promises or deals about the potential gun charge. He maintained he and Williams's entire discussion occurred during the video-recorded interview.

The judge took the suppression issue under advisement. Despite Williams being present and testifying at the suppression hearing, neither he nor his counsel brought up the pro se speedy trial motions or the motion to dismiss. After the suppression hearing, Williams wrote several letters asking the trial court to hear his motion to dismiss. But he never brought it for a hearing nor did the trial judge rule on it.

On June 6, 2019, the trial judge denied the motion to suppress. He found Williams's

5

> claim of a purported deal between him and Detective Floyd was not credible. Two days before trial, on August 27, 2019, Williams's counsel filed a motion for discovery.
>
> Trial began on August 29, 2019. After a two-day trial, the jury found Williams guilty of possessing a firearm as a convicted felon. Because Williams had two prior felony convictions, the trial judge sentenced him as a habitual offender to ten years in prison to run consecutive to all other earlier sentences. Williams now appeals.

*Williams*, 305 So. 3d at 1127–28 (paragraph numbering and footnotes omitted).[5]

### III
### Analysis

Criminal defendants have a federal constitutional right to a speedy trial, which is governed by *Barker v. Wingo,* 407 U.S. 514, 530 (1972). Under *Barker*, a court must weigh four factors to reach a speedy trial determination: (1) length of the delay, (2) reason for the delay, (3) the accused's assertion of the speedy trial right, and (4) prejudice to the accused. *Id.* at 515. These factors must be considered together, and no single factor is determinative. *Id.* at 533. An analysis of the *Barker* factors here reveals that Williams is not entitled to habeas relief on his speedy trial claim.

#### A. Length of Delay Factor

The length of delay factor serves initially as a "triggering mechanism" and if the delay is presumptively prejudicial, further analysis of the remaining factors is triggered.[6] *Id*. at 530. In *Barker*, the United States Supreme Court held:

> Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay is necessarily dependent upon the peculiar circumstances of the case.

*Id*. at 530–31. The relevant delay period "is that following accusation, either arrest or indictment,

---

[5] The Mississippi Supreme Court noted that "[t]he grand jury did not charge Williams for the alleged kidnapping or rape." *Williams*, 305 So. 3d at 1128 n.2.

[6] "Presumptively prejudicial" in the context of triggering the full four-factor *Barker* analysis is distinct from determining whether prejudice may be presumed when examining prejudice as part of the fourth factor, which has a more rigorous standard of review. *U.S. v. Duran-Gomez*, 984 F.3d 366, 374 n.6 (5th Cir. 2020).

whichever occurs first." *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993) (citing *Dillingham v. United States*, 423 U.S. 64, 65 (1975)). In the Fifth Circuit, a one-year delay is presumptively prejudicial. *Id*. (citing *Nelson v. Hargett*, 989 F.2d 847, 851–52 (5th Cir. 1993)). The Mississippi Supreme Court has held that a delay of eight months or longer is "presumptively prejudicial." *State v. Woodall*, 801 So. 2d 678, 682 (Miss. 2001) (citing *Smith v. State*, 550 So.2d 406, 408 (Miss. 1989)).

Here, officers arrested Williams on February 27, 2018. Doc. #10-3 at 203. He was indicted on June 27, 2018, and remained in custody until his trial began on August 29, 2019.[7] Doc. #10-1 at 2–4; Doc. #10-6 at PageID 490. On direct appeal, the Mississippi Supreme Court held that the delay—some eighteen months—gave rise to a presumption of prejudice because it exceeded eight months.[8] *Williams*, 305 So. 3d at 1132. However, it noted that "a presumptively prejudicial delay does not mean the defendant suffered *actual* prejudice;" rather, "this delay acts as a triggering mechanism for further inquiry into the *Barker* analysis, and shifts the burden to the State to show the reason for delay." *Id.* at 1132. While the Mississippi Supreme Court also noted that the delay triggered the full *Barker* analysis and went on to analyze the three remaining *Barker* factors, it did not separately discuss how an eighteen-month delay is to be regarded in the four-factor analysis. *Id.* at 1132–33. However, the Fifth Circuit has found that such a delay is not "long enough to weigh heavily in favor of the accused." *Amos v. Thornton*, 646 F.3d 199, 207 (5th Cir. 2011) ("A delay must persist for at least eighteen months over and above [the] [one year] minimum for this factor to strongly favor the accused.").

### B. Reason for Delay Factor

Under *Barker*, a court may assign a different weight to each reason for delay, considering

---

[7] As the Mississippi Supreme Court observed, "[t]he subject firearm charge prompted a petition to revoke the probationary period of one of his prior burglary convictions," and "[t]he record also shows that, around [that] same time, Williams was indicted for a separate statutory rape." *Williams*, 305 So. 3d at 1131; Doc. #10-2 at 13–14.

[8] The eighteen-month delay between Williams' arrest and trial was also presumptively prejudicial under the Fifth Circuit's one-year standard, triggering the full *Barker* analysis. *See Nelson*, 989 F.2d at 851–52.

7

"whether the government or the criminal defendant is more to blame for th[e] delay." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009). The Mississippi Supreme Court has observed that a deliberate attempt to delay trial to hamper the defense should be weighed heavily against the State, while unexplained or negligent delays also weigh against the State, "but not heavily." *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008); *see Williams*, 305 So. 3d at 1132 (citing *Barker*, 407 U.S. at 531).

The sequence of events between arrest and trial shed light on the reasons for the eighteen-month delay in this case. As an initial matter, on direct appeal, the Mississippi Supreme Court noted the absence of many of the typical filings considered under the reason for delay prong of the *Barker* analysis, such as motions seeking a continuance, orders denying a motion to dismiss for a speedy trial violation, and notices or orders setting trial dates. *Williams*, 305 So. 3d at 1132. It recounted that Williams was arrested on February 27, 2018, and indicted on June 27, 2018. *Id.* Under state law, "[w]hen a defendant is indicted by the first available grand jury in the county, the time between arrest and indictment is not counted against either the [S]tate or the defense." *Id.* (quotation omitted). "The record does not mention whether the first available grand jury indicted Williams" and he "does not suggest or argue to the contrary." *Id.* Thus, the Mississippi Supreme Court held that the four-month delay between arrest and indictment should not weigh against the State or Williams. *Id.* This left fourteen months of delay to consider.

While neither party moved for a continuance, Williams filed three pro se motions, and his trial counsel filed two. Williams filed a pro se motion for a speedy trial on August 13, 2018, nearly six months after his arrest in February 2018, and six days after his arraignment on August 7, 2018. Doc. #10-1 at 7–8. He filed a second pro se speedy trial motion on November 1, 2018. *Id.* at 9–10. On February 14, 2019, Williams' counsel filed a motion to suppress his written statement. *Id.* at 11–12. Williams then filed his third pro se motion on May 1, 2019, seeking dismissal of the charges on speedy

8

trial grounds, arguing that "[he] filed a motion to dismiss the indictment for the failure to provide a speedy trial well within the 270 day period." *Id.* at 13–14.

The trial court held a hearing on the motion to suppress the following week, on May 8, 2019. Doc. #10-2 at 5–36. Williams testified at the suppression hearing; however, neither he nor his trial counsel mentioned the pro se speedy trial motions or the pro se motion to dismiss. *See id.* After the suppression hearing, Williams sent letters to the trial court seeking a ruling on his motion to dismiss. Doc. #10-1 at 15–16, 19. But Williams did not bring the motion for a hearing, and the trial court never ruled on it. *See generally* Doc. #10. Beyond the August 27, 2019, motion for discovery filed by Williams' counsel, no further motions were filed. Doc. #10-1 at 26.

The Mississippi Supreme Court considered the impact of Williams' motions on the second *Barker* factor, beginning with the motion to suppress filed by his counsel. *Williams*, 305 So. 3d at 1132–33. The trial court denied the February 14, 2019, motion to suppress on June 6, 2019. The Mississippi Supreme Court explained that, under state law, "[t]he lapse in time while a motion to suppress is being considered by the trial court [is] not counted against the State." *Williams*, 305 So. 3d at 1132 (quoting *Brewer v. State*, 725 So. 2d 106, 119 (Miss. 1998). More precisely, "[t]he time between the *presentation* of the motion to suppress and the judge's ruling is not counted against the State." *Id.* (emphasis and alteration in original). That delay was about a month. *Id.*

The Mississippi Supreme Court also considered that "Williams never brought his pro se motion to dismiss for a hearing." *Id.* Williams "participat[ed] in the courtroom on his motion to suppress" but "neither Williams nor his counsel pursued his speedy trial motions or motion to dismiss." *Id.* Such "tends to cut against Williams's speedy trial assertion."[9] *Id.*

---

[9] As discussed below, because Williams had counsel to represent him in his criminal case, the trial court was not obligated to consider or rule on his pro se motions.

9

Finally, the Mississippi Supreme Court held that, "[u]ltimately, outside the eight-month period—after which we presume prejudice—this is approximately an unaccounted five-month delay." *Id.* But it noted that "Williams does not argue nor does the record show anything more than neglect by the State or the trial court," so while this delay weighs against the State, it is not weighted as heavily as an intentional delay." *Id.* at 1133 (citation omitted); *see Barker*, 407 U.S. at 531 (unintentional delay will be weighed less heavily against the State than an intentional delay).

No evidence suggested that the State delayed the prosecution of Williams' case to create an impermissible advantage. The Mississippi Supreme Court thus determined that the reason for the delay should weigh against the State – but not heavily.

### C. Assertion of Speedy Trial Right Factor

A defendant's assertion of his speedy trial right weighs heavily against the State, while failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. *Barker,* 407 U.S. at 531–32. A significant delay in asserting the right will weigh against the defendant but less so than failing to raise the right at all. *Duran-Gomez*, 984 F.3d at 378 ("If a defendant waits too long to assert his right, his 'silence will be weighed against him.'"); *see United States v. Parker*, 505 F.3d 323, 329–30 (5th Cir. 2007).

A demand for a speedy trial may come in the form of "an objection to a continuance or a motion asking to go to trial." *United States v. Frye*, 489 F.3d 201, 211 (5th Cir. 2007). At a minimum, a defendant must "manifest his desire to be tried promptly." *Id.* at 211–12. Thus, a motion to dismiss, without more, does not constitute "evidence that the defendant wants to be tried promptly." *Id.* at 212 (citing *Barker,* 407 U.S. at 534–35).

On direct appeal, the Mississippi Supreme Court considered the State's position that Williams failed to assert his speedy trial right between his arrest and indictment, as well as the State's argument

10

that "the nearly six-month lapse between [Williams'] arrest and pro se motion for a speedy trial is 'critical to the analysis of a speedy trial issue'"—"[i]n other words, the State believes Williams's tardy assertion of his speedy trial right should weigh against him." *Williams*, 305 So. 3d at 1133. The Mississippi Supreme Court also observed that "[t]he Fifth Circuit has noted the point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing." *Id.* (quoting *U.S. v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976)). It reasoned that "[t]o this extent, the particular promptness is important because it perhaps suggests that any hardships Williams suffered between arrest and indictment were either minimal or caused by other factors." *Id.* at 1133. Thus, it determined that "[e]ven so, while delay in raising a speedy trial claim may cost a defendant points in the *Barker* analysis, there is no procedural bar." *Id.* "But th[e] [Mississippi Supreme] Court has been clear that this factor weighs against defendants who wait a significant amount of time after arrest to demand a speedy trial." *Id.* The Mississippi Supreme Court concluded that "[t]hough [Williams'] assertion was significantly delayed—which weighs against him in the *Barker* analysis—the State acknowledges Williams did eventually assert his right." *Id.* Because of the delay, this factor weighed somewhat against Williams.

### D. Prejudice to Defendant Factor

The interests protected by the right to a speedy trial are (1) prevention of oppressive pretrial incarceration, (2) an effort to minimize anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. The "most serious" of these rights is the last, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* In extreme cases, a court may presume prejudice based upon delay in bringing the petitioner to trial. *Goodrum*, 547 F.3d at 260-61. However, such a presumption only arises when the first three factors weigh heavily in favor of the defendant—with a delay of at least five years. *Id.*

11

In this case, the first three *Barker* factors do not all weigh heavily in Williams' favor, and the delay was far less than five years. This Court may not simply presume prejudice as to this factor in the present case.[10]

Additionally, the facts of this case do not support Williams' claim that the delay in reaching trial caused him to suffer undue prejudice "to himself or to his defense." *Williams*, 305 So. 3d at 1133. He argued on appeal that "memories have faded, and testimony is less clear now than had [he] been brought to trial in a timely manner." Doc. #10-7 at 7. The Mississippi Supreme Court provided a succinct analysis regarding prejudice:

> While Williams's pretrial incarceration was lengthy, that alone is insufficient to show prejudice. Williams's only argument against his continued incarceration was that he was "missing out" on time with his child. Williams does not show he suffered anxiety or concern from the delay. But most important, he has failed to show any prejudice or impairment to his defense. The case turned simply on Singleton's and Williams's credibility. This Court may find prejudice when evidence is lost, witnesses die, or the investigation turns stale. But none of these issues occurred. Because Williams has not shown any actual prejudice, the State's delay did not violate his right to a speedy trial.

*Williams*, 305 So. 3d at 1133 (citations omitted).

The Mississippi Supreme Court's prejudice analysis is sound. Williams has not shown his pretrial detention was exceptionally oppressive nor has he shown he suffered anxiety or concern regarding that detention.[11] Importantly, he has not shown his pretrial detention prejudiced his defense, which rested almost entirely on his credibility and Singleton's credibility. No evidence was lost,[12] no witness died,[13] and the investigation did not turn stale.[14] Accordingly, the Mississippi Supreme Court's

---

[10] Williams argued on appeal that nothing in the record overcomes the "presumption" of prejudice; however, as discussed above, the facts of this case do not give rise to a presumption of prejudice in the full *Barker* analysis.

[11] Missing time with a child (Williams' sole argument against incarceration) is "[a]nxiety of the sort present to some degree in virtually every case [and] does not constitute actual prejudice." *U.S. v. Avalos*, 541 F.2d 1100, 1115 (5th Cir. 1976).

[12] *U.S. v. Crouch*, 84 F.3d 1497, 1515 (5th Cir. 1996) (lost evidence may show actual prejudice if information could not otherwise be obtained from other sources).

[13] *Id*. (loss of witness testimony may show actual prejudice if such testimony would have aided defendant).

[14] *Id*. (stale investigation may show actual prejudice).

holding that Williams did not suffer unfair prejudice from his lengthy pretrial detention was reasonable.

### E.  Weighing *Barker* Factors

Having reviewed the *Barker* factors individually, the Court must weigh them to decide whether the State violated Williams' right to a speedy trial.

#### 1.  Length of delay

As to the length of the delay, the four months between arrest and indictment is neutral, leaving fourteen months to consider.  *Williams*, 305 So. 3d at 1131.  The one month between presentation of Williams' motion to suppress and the ruling on it is also neutral, leaving thirteen months of delay to consider.  A thirteen-month delay is not "long enough to weigh heavily in favor of the accused," though it does weigh in Williams' favor to some degree.  *Amos*, 646 F.3d at 207 (5th Cir. 2011) (delay of sixteen and seventeen months did not weigh heavily in favor of accused).  The Mississippi Supreme Court's ruling that the first factor weighed somewhat in Williams' favor was reasonable.

#### 2.  Reason for delay

The remaining thirteen-month delay appears to arise out of the handling of several motions in Williams' case.  *See generally* Doc. #10-1.  However, as the State notes in its brief, no evidence suggests that the prosecution had an impermissible motive (such as undermining the defense).  Consequently, the Mississippi Supreme Court's ruling that this factor weighed slightly in William's favor is reasonable.

#### 3.  Attempts to assert speedy trial right

Williams attempted to assert his right to a speedy trial through pro se motions and letters to the trial judge.  However, the Mississippi Supreme Court has held that courts need not entertain pro se motions by criminal defendants represented by counsel:

> [The defendant] is represented by an accredited lawyer, and it is upon the shoulders of his counsel that the responsibility rests for raising all appropriate appellate questions. This Court is neither going to substitute its own judgment for the judgment of [the defendant's] counsel, nor remove from this attorney the responsibility of adequate

> representation. Furthermore, it would be unfair to require the state's attorneys to respond to the myriad questions which can be dreamed up by an incarcerated individual, who is not an attorney.
>
> It is the duty and responsibility of counsel for [the defendant] to raise all appropriate questions.
>
> There being no lawful or Constitutional requirement that we do so, this Court is not going to wade off into a swamp of pro se ancillary briefs.

*Johnson v. State*, 449 So. 2d 225, 225 (Miss. 1984) (courts need not entertain pro se motions of represented defendants in appellate context).[15] And Williams did not request hybrid representation—a mix of pro se representation and representation by counsel—and the trial court did not grant such on its own. *See Henley v. State*, 729 So. 2d 232, 237 (Miss. 1998) (trial has discretion to determine whether hybrid representation is appropriate). Because the trial court did not, and was not required to, consider Williams' pro se motions or letters, the time they were pending does not weigh in his favor.[16]

Further, under Mississippi Rule of Criminal Procedure 34.2, it was Williams' responsibility, through counsel, to pursue his motions to resolution:

> It is the duty of the movant, when a motion or other pleading is filed (including a motion for a new trial), to pursue the motion to hearing and decision. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion; however, the motion may be heard after the commencement of trial.

Miss. R. Cr. P. Rule 34.2. While Williams attended a May 8, 2019, hearing on his motion to suppress, he did not mention his motions and letters seeking dismissal on speedy trial grounds during the hearing. Doc. #10-2 at 5–36. Notably, the suppression hearing took place only one week after Williams filed his motion to dismiss on May 1, 2019, so the matter seemingly should have been fresh on his mind. Under

---

[15] The Mississippi Supreme Court noted an exception to this rule when appellate counsel advised there are no arguable issues to appeal. *Lindsey v. State of Mississippi*, 939 So. 2d 743, 748 (2006). In that instance, the appellate court must consider the pro se briefing. *Id.* That exception does not apply here.

[16] Though the trial court did not acknowledge Williams' pro se filings and letters, the Mississippi Supreme Court did—but only to the extent the filings showed Williams attempted to assert his speedy trial rights. *Williams*, 305 So. 3d at 1133.

Mississippi Rule of Criminal Procedure 34.2, Williams' failure to properly pursue the motions constituted an abandonment of such motions. *See* Miss. R. Cr. P. 34.2.

Even if Williams' pro se efforts to seek a speedy trial had been valid, his six-month delay in pursuing such relief undermines his claim. Based on the six-month delay in seeking a speedy trial, the Mississippi Supreme Court found that this factor weighs somewhat against Williams. On the facts of this case, that decision was reasonable.

### 4. Prejudice from delay

The Mississippi Supreme Court ultimately found that Williams suffered no prejudice from the eighteen-month delay between his arrest and his trial. As discussed above, it concluded (1) Williams' incarceration was not abnormally oppressive, (2) he did not allege or prove that he experienced atypical anxiety or concern about the delay in his trial, and (3) his defense was not impaired by the delay. These conclusions are well-supported by the record in this case, as well as by controlling law. As such, the Mississippi Supreme Court's rulings were neither contrary to, nor an unreasonable application of, federal law as decided by the United States Supreme Court, and the Mississippi Supreme Court did not make an unreasonable determination of the facts in light of the evidence presented.

### F. State Law Claims Not Cognizable Through Federal Habeas Corpus

Williams' speedy trial claims arising out of state statutory or state constitutional law are not valid in a federal habeas corpus proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). So to the extent Williams claims relief under state law, those claims must be dismissed with prejudice for failure to state a claim upon which relief could be granted. Because none of Williams' claims have merit, his petition for a writ of habeas corpus will be dismissed with prejudice.

### G. Evidentiary Hearing Not Warranted

As for Williams' request for an evidentiary hearing in his prayer for relief, the request will be denied. Under the Anti-Terrorism and Effective Death Penalty Act, requests for an evidentiary hearing are evaluated under 28 U.S.C. § 2254(e)(2). *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). When a habeas corpus petitioner fails to develop the factual basis of a claim, his entitlement to an evidentiary hearing is restricted to the narrow exceptions of subsection (e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the application shows that–
>
> (A) the claim relies on–
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). These exceptions apply where the failure to develop the facts of claim is solely the result of a decision or omission of the petitioner. *Murphy*, 205 F.3d at 815. Overcoming the restrictions in § 2254(e)(2) does not guarantee a petitioner an evidentiary hearing; it merely "opens the door for one;" the district court retains the discretion to grant or deny an evidentiary hearing. *Id.*

Regardless, a full and fair hearing does not necessarily require live testimony; a "paper hearing" may suffice to afford a petitioner a full and fair opportunity to present factual issues pertinent to his case. *Id.; see Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996). And where a district court has before it enough facts to make an informed decision regarding the merits of a claim, it may refuse to grant an evidentiary hearing, even where the state court made no explicit factual findings. *McDonald v. Johnson*,

139 F.3d 1056, 1060 (5th Cir. 1998).

Having reviewed the record of this case and applied the analysis above, the Court concludes that an evidentiary hearing is not required to decide the sole ground for relief in this case because the paper record is sufficient to decide Williams' claims.

## IV
## Certificate of Appealability

Rule 11 of the Rules Governing § 2254 Proceedings in the United States District Courts requires a court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability ("COA") will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the *Slack* criteria, the Court concludes a COA should not issue in this case.

## V
## Conclusion

Williams' petition for a writ of habeas corpus [1] is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**.

**SO ORDERED**, this 30th day of September, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**